CITED in *State, ex rel. Mitchell*, v. *Tolan*, 4 *Vroom* 202.

---

THE STATE, THE GLOUCESTER MANUFACTURING CO., PROSECUTOR, v. THOMAS HALLAM, COLLECTOR, ETC.

1. Under the act of 1862, private corporations must be assessed at the full and actual value of their capital stock, and not on the full amount of their capital stock paid in.
2. The provisions of several apparently conflicting sections of the act, discussed.

On *certiorari* to review an assessment made against the property of the defendants, under the tax law of 1862, and to settle the true mode of valuation.

---

---

For the prosecutor, *A. Browning.*

For the defendants, *P. L. Voorhees.*

The opinion of the court was delivered by

VAN DYKE, J.   The plaintiffs are a corporation, chartered by the legislature of the state.   By the affidavits, taken under the order of the court, and which are not controverted, it appears that their capital originally paid in was $361,000, but through losses of various kinds, their works having been twice destroyed by fire, their stock has become reduced in value from $25 per share to five dollars per share, which would reduce the value of the $361,000 paid in to $72,200, yet the assessor has assessed them on the sum of $361,000, originally paid in, and not on the present actual value of their property ; and whether this assessment on the full sum paid in is right or not, is the question for our consideration.

The assessment was evidently made in a supposed obedience to the directions of the 8th section of the act of March 28th, 1862, which enacts "that all private corporations of this state, except those which, by virtue of any irrepealable contracts in their charters, or other contracts with this state, are expressly exempted from taxation, shall be, and are hereby required to be respectively assessed and taxed at the full amount of their capital stock paid in and accumulated surplus."

If the act contained nothing else on the subject but this, however unreasonable and unjust it might seem, I would feel myself constrained to sustain the construction put upon it by the assessor.   But to give the 8th section this construction, is to bring us into direct conflict with the language of the 7th section, which is quite as explicit and positive, far more controlling and far less dubious in its character, than the 8th section.   The 6th section relates merely to a poll-tax, but the 7th section is the first one which defines and describes the kind of property which is liable to taxa-

tion. Without entering into minute specifications of the objects of taxation, it lays down the broad, clear, and universal rule, which is eminently just, that *all* property within the state, of every kind and description, whether real or personal, and whether belonging to individuals or *corporations*, shall be liable to taxation subject to certain exemptions mentioned, and that this property shall be assessed at the *full and actual value* thereof. The section reads as follows : " That all real and personal estate within this state, whether owned by individuals or corporations, shall be liable to taxation, in the manner, and subject to the exemptions herein after specified, and shall be assessed at the full and actual value thereof, at such rate per dollar as to raise," &c.

Now it is very manifest, in the case before us, that the assessor assessed the property of this corporation at its *full* value ; but it is equally manifest that he did not assess it at its *actual* value, which is contrary to the clear intention and express language of the 7th section.

After passing over several sections, mostly containing directions as to the *mode and manner* in which the assessment is to be made, we reach the 14th section, which is the last on that subject, and in which the duties of the assessor in that respect seem to be summed up, adding the *tests* by which he is to ascertain the full and fair value of all the property, which he is required to assess under the act. That section enacts, " that it shall be the duty of the assessors, in assessing *any* property to be assessed under this act, to assess and value such property at its full and fair value, and at such price as in his judgment said property would sell for, at a fair and *bona fide* sale by private contract at the time such assessment is made ; and every assessor shall annex to his duplicate an oath or affirmation, in writing, to be taken before any person authorized to administer an oath or affirmation, that all assessments in the said duplicate contained, have been made according to the requirements of this section."

Now this section not only requires each assessor to make every assessment which he makes under this act, according

State v. Hallam.

. to the requirements of this 14th section, that is, to assess all property at its full and fair valuation, and at such price as in his judgment it would sell for, at a fair and *bona fide* sale by private contract, at the time of making the assessment; but it also requires him to add to them his oath or affirmation that he has so made them according to that section. But the assessor certainly did not assess this corporation or its property according to the directions and requirements of this section. He says himself, in his evidence, that he did not so assess it, but that he did assess it upon its capital stock paid in, irrespective of its market value, and that he did not stop to inquire whether it was above or below par. He obtained his information of the capital paid in of the officers of the company, and was informed by them of their condition and of the reduced and low condition of their stock, but made the assessment as he did because he deemed it his duty so to do. Now can it be supposed that the legislature ever intended to make such a hard and cruel distinction against poverty, and in favor of wealth, even among corporations themselves, as this construction of the assessor seems to claim.

Can we suppose that the legislature meant to tax one corporation, which still retains all its capital paid in, and has lost nothing, simply on the full amount of such capital, and at the same time to tax another corporation which has lost next to everything, on the same amount of paid in capital, on the ground that it had once owned it, but which, from accident by flood, or fire, or tempest, or other unavoidable cause, had long since been swept from existence?

The capital of a company may be reduced so low that to compel it to pay a single tax assessed on the whole amount paid in would exhaust every vestige of property that remained, and I do not see, if the construction contended for be correct, why the assessors are not required to search out every broken bank, and every bankrupt turnpike company, and every bankrupt mining and manufacturing company and railroad company which has been legally organized in the

state, and not legally dissolved, and assess them at the full amount of their capital stock paid in; for it seems, according to this construction, that whether a corporation still possesses all the capital that was once paid in, or whether it possesses only a part of it, or whether it possesses *no* part of it, are questions about which the assessors have no right or power to inquire, but must simply assess it at its full amount of capital stock paid in, without regard to any other consideration whatever.

There may be corporations still doing business, whose paid in capitals are as thoroughly sunk and gone as those which have ceased to do business. Why should they not all be treated alike, and taxed either on their paid in capitals or not taxed at all? And if the assessor can inquire whether their capitals be wholly gone, why may he not inquire if they be but partly gone? for the question, whether a corporation is taxable or not, does not, it seems, depend on whether its paid in capital is still preserved or not, or only a part or none of it, but simply whether it is a corporation or not which once had a paid in capital. If it be, the assessor must assess it on the full amount of the capital so paid in. But I cannot suppose that any such intention was ever entertained by the legislature, or that we can put any such construction upon their acts.

I presume the legislature were sufficiently discriminating against partially exhausted corporations, as between them and individuals, when they permitted the latter to deduct their debts from the valuation of their taxable property, but refused it to the former, without taxing them for property which they did not own. Can we possibly suppose that the legislature ever intended to tax any persons, either natural or artificial, for property which they did not own? And yet this is precisely what the assessor has done in the case before us. He has taxed these plaintiffs with $288,800 worth of property which they have not got, and which they do not own.

What, then, is the true interpretation of these three sec-

tions, which at first view present some appearance of con-
flict? They seem to me to be quite consistent with each
other, when properly read and understood. The 7th and
14th are entirely so, and the 8th effects in the end the
same result precisely. All three tax property, though
by a somewhat different process, exactly at its true and
actual value. The 7th and 14th do so directly, by taxing
*all the property* which corporations own; and the 8th, by
taxing the paid in capital and surplus in that form, exactly
reaches and taxes all the property which corporations of that
class actually own, for their capitals and surplus embrace all
the property which they can own. For this reason, I think
the 8th section is quite unnecessary, as the same result
would be reached, if the corporations mentioned in the 8th
section were taxed according to the provisions of the 7th
section.

The legislature, having abandoned the idea of taxing the
stock of corporations in the hands of individual stockholders,
have determined, instead, to reach and tax it in the hands
of the corporations themselves. In the 7th section, it is
called estate real and personal. In the 8th, it is termed
capital stock, and in the 14th, the term property is used.
But these expressions all mean the same thing. A corpora-
tion has no capital stock of any value, except what is repre-
sented by the property which it owns, either real or per-
sonal, and in the 7th section provision is made for taxing all
their capital stock by taxing all their property, real and
personal, and this provision would also extend to and include
all their accumulated surplus; for accumulated surplus can
only consist of the undivided profits which the company has
earned or acquired, and still has on hand, and is necessarily
embraced in the property of some kind which the corporation
owns.

The 7th section, as already remarked, is sufficiently broad,
as well as explicit, to cover all classes and cases of taxable
corporations; but the legislature evidently supposed that the

real amount and value of the property of those corporations whose capitals were still full and unimpaired, and especially if they had an accumulated surplus besides, could be much easier, as well as much more certainly reached, by taxing such capital and surplus directly and in that form, than by attempting to search out all the particular items and parcels of such property, wherever it might happen to be found; and they accordingly, in the 8th section, gave directions to the assessors, that in assessing all private corporations which still had their paid in capitals, and also an accumulated surplus, to assess them directly and at once on such capital and surplus.

But all this is neither inconsistent nor in conflict with the 7th and 14th sections, which require that all the property of corporations, as well as of individuals, shall be assessed at its full and actual value. The 8th section only prescribes the particular manner in which the property of a certain class of corporations shall be assessed, viz. by assessing their paid in capital and accumulated surplus.

But it does not apply to any other corporations. The section, in terms, only refers to those corporations which *have* a surplus. There can be no such thing as an accumulated surplus unless the paid in capital is kept good. The earnings and profits of a corporation must be used to meet its losses and expenses first, and if they do not do this and more, so that the assets and property show a balance over and above the paid in capital, there can be no surplus. The directions in the 8th section can only, and do only apply to such corporations as these. Hence the 7th and 14th are not disturbed by it.

It was quite useless, if not absurd, for the 7th and 14th sections to direct, that all the estate and property of corporations should be assessed at its full, fair, and actual value, if such assessments were all to be controlled by the 8th section; for, according to that section, if that is to prevail, their property is *not* assessed at its full, fair, and actual value; but

the corporation, whose property is still worth all the capital that ever was paid in, is taxed just as much, and no more, as the corporation whose property and assets are reduced in value to next to nothing. I cannot admit the existence of such an absurdity in the act.

It appears very much as if the legislature, after having for a special reason introduced the 8th section, fearing that some misapprehension might arise, to remove all doubt, added the 14th section, thereby reaffirming the principles of the 7th section, furnishing the mode by which the assessor was to ascertain the true value of the property assessed, and requiring him to add his oath or affirmation that he had made all of his assessments according to the provision of the last named section. And yet the assessor, in the case before us, with these two sections in full view, has assessed these plaintiffs for $366,000 worth of property, when it clearly appeared to him that they only owned $72,200 worth. This, I think, was certainly wrong, and the assessment should be reduced.

The cases of *The Washington Manufacturing Company, The Kaighn's Point Ferry Company, The Camden Water Works Company, The West Jersey Ferry Company,* and *The Camden and Philadelphia Ferry Company,* were all argued at the same time, and are to be governed, it is agreed, by the same principles. The assessments in these cases, also, should be reduced.

VREDENBURGH, J., dissenting. This *certiorari* was brought to test the correctness of the tax assessed for the year 1862 upon the property of the prosecutor. The prosecutor is a private corporation, and its capital stock has been assessed at par. It is not denied that the actual value of the stock is not over seventy-five cents on the dollar. The prosecutor contends that the tax should be at the real, and not its par value; that the tax should be in proportion to value; or, in other words, on $75,000, and not on $100,000. This tax was

State v. Hallam.

assessed by virtue of the act of March 28th, 1862, *Pamph. Laws* 344.*

It is contended, on the part of the prosecutors, that the question is regulated by the 14th section of this act. This provides that it shall be the duty of the assessors, in assessing any property to be assessed under this act, to assess and value such property at its full and fair value, and at such price as, in his judgment, said property would sell for at a fair and *bona fide* sale by private contract at the time such assessment is made. The prosecutor contends that in this case this section has been disregarded, and that the assessor should only have taxed it at such price as in his judgment the capital stock would have sold for at private sale. The prosecutor further relies on the 7th section of the same act, which provides that all real and personal estate, whether owned by individuals or corporations, shall be assessed at the full and actual value thereof.

The defendant, however, justifies his assessment under the 8th section of the same act. This provides that all private corporations shall be and are hereby required to be respectively assessed and taxed at the full amount of their capital stock paid in and accumulated surplus, and the persons holding the capital stock of such corporations shall not be assessed therefor. It is apparent, if we construe this 8th section literally, that the tax is correct as it stands; for it says expressly that every private corporation shall be taxed at the full amount of its capital stock paid in. But the plaintiff in *certiorari* contends that this language is modified by that of the said 7th and 14th sections. I think not. I think the 8th section means precisely what it says. This will be manifest from the presumption that the legislature must be intended to mean what they plainly say. I do not see how its clear and explicit language can be subject to doubt. It says expressly, that "every private corporation shall be taxed at the full amount of its capital

---

* This opinion refers to the facts in the case of the Camden Water Works Company.

stock paid in and accumulated surplus," and devotes two long sections, the 8th and 9th, to effect that object, and to make that very important change upon the law as it stood before. · But the prosecutors contend that this 8th section taxes private corporations on their capital and accumulated surplus, and therefore applies only to corporations that have an accumulated surplus; that corporations whose stock is below par can have no surplus, and that therefore such corporations are not within the meaning of this section; that the section was intended to govern those corporations only which had an accumulated surplus. I cannot so think, for many reasons. In the first place, such is not the grammatical sense of the terms used. The language is, "all private corporations shall be taxed at the full amount of capital paid in and accumulated surplus." Now suppose there is no accumulated surplus, and the capital stock is taxed, is not the surplus also taxed? The surplus is nothing, and the tax on it is nothing, and the tax on the capital is as strict a compliance with the words ·of the act, if there is no surplus as if there is. But again, if private corporations which have no surplus be not within this 8th section, then neither such corporations nor the ·property they represent can be taxed at all; for this very section provides that the persons holding the capital stock shall not be assessed therefor, and no other section or law provides for taxes on corporations as such.

All the other sections relate to taxes on property only, which stock belonging to individuals is not, so far as corporations are concerned. Let us now take a more general view of this subject.

Before the act of 1854, *Nix. Dig.* 850, the general principle of taxation was to tax the individual for the visible property he had in possession, without deducting his debts. The great change introduced into this act of 1854 was to tax to the individual all property, real and personal, including stocks in corporations, in his possession, deducting his debts. One of the main objects of the act of 1862, under which this tax was levied, was to change his principle as to private

corporations, and instead of taxing the individual for the stock he owned, which might be nothing after deducting either his own debts or the debts of the corporation, to tax the corporation itself by a special standard,—to tax the corporation itself, not for what its property was worth after deducting debts, but on its capital stock paid in and its accumulated surplus. This act of 1862 still preserves the principle of taxing individuals according to what they were worth by deducting their debts from their property, and placing the tax on the balance. But as regards private corporations, that was the precise principle the legislature meant to change by this act of 1862, and to tax corporations not for what they were worth, by first deducting their debts, but upon their whole capital paid in and accumulated surplus. This kind of tax was, in its essence, partly a capitation tax and partly a property tax; it was a capitation tax, regarding the corporation as an artificial person, so far as regards the tax on their capital stock paid in, and a property tax, so far as regards the accumulated surplus. To now tax a private corporation for what it is worth, or its stock at its value in the market, is but coming back again to the act of 1854, and repealing the act of 1862 by judicial construction. If this be not correct, why was the act of 1862 passed at all. Its effect, in this regard, is precisely like that of 1854; the only difference is, that in the one case the tax is paid by the individual stockholders, in the other by the treasurer of the corporation, but its amount and object are the same.

That this construction of the act of 1862 is correct appears from the whole structure of that act. Thus the act of 1862 preserves the great principle, which was the corner-stone of the act of 1854, which so altered our ancient tax laws, *viz.* that of taxing the individual for what he was worth; but it intended to change that whole principle as regarded private corporations, and apply an entirely different theory to the whole mass of private corporations in the state. No one can read its different sections, especially the 8th, 9th, 10th, 12th, and 13th, without being struck with the anxiety and

determination with which the legislature are pursuing that object.

Let us now turn our attention again to the 8th section of this act of 1862.

As we have before remarked, if private corporations which have no surplus are not within its provisions, then, as there is no other section or law that taxes them, they cannot be taxed at all. But there are other difficulties connected with the matter. If the tax is to be, not upon the amount of capital paid in, but upon its value in the market, if there is a surplus it will probably be above par, and that in proportion to the amount of the surplus. What then? How, under the act, are we to tax it above par? or if we do, do we not, as we have to tax the surplus too, tax the same property twice over, first the surplus, and then the stock above par which represents it.

But again, the value of a stock in the market depends often, not so much on the value of the property it represents as upon the income it produces; and in the market would often bring $150, when all the property of the corporation, if sold, would not bring twenty. This would be a tax not on property, but upon income, which there are no indications in the act, that the legislature intended.

But again, the value of a stock, for the most part, depends on the debts it owes. If $100,000 are paid in, its stock is presumed to be worth par; if the debts are $100,000, it is worth nothing.

Is there any pretence that, under this act, the assessors, in assessing private corporations, are to deduct debts of the corporations? Are not all the mandates of the act in the very teeth of such a procedure? When the legislature intend that debts shall be deducted from property, do they not, as in the 12th section, say so explicitly? And do they not pass the 8th and 9th sections for the express and only purpose of making that distinction between corporations and individuals?

But again, this great change which the legislature meant

to make between individuals and corporations, by the act of 1862, is further manifest from the remaining clauses in its 8th section. There are many corporations in this state which have no capital stock. These clauses provide " that such corporations as have no capital stock, shall be assessed for the full amount of their property and valuable assets, without any deduction for debts or liabilities."

Here is the same distinction between the taxes of individuals and corporations. The individual is taxed for his property *after*, these corporations *before* deducting debts. Can it be possible that the legislature intended to make any such distinction between corporations which had, and those that had not capital stock, as to tax the one *free from*, the other *subject to* their debts?

That the intent of the 8th section is precisely what it says, is further manifest from the 9th and 13th sections. This 13th section provides that the real estate of private corporations shall be assessed to said corporations, and the amount deducted from the amount of the capital stock and surplus. Now, if the prosecutors are right, this real estate would have to be deducted, not from the amount of the capital stock, but from the amount of the market value of the stock.

But it is contended, by the prosecutors, that the construction comes in collision with the 7th section of the act. Our first answer is, if it does, the 8th section is subsequent to the 7th, and if both cannot stand, the 7th will have to yield. But secondly, we do not see any such collision. The 1st section of the act provides, that there shall be assessed on the inhabitants of this state, and on their taxable real and personal property, and upon the other objects of taxation hereinafter specified, a state tax. So that the 1st section recognizes three distinct objects of taxation : 1st, persons ; 2d, property ; 3d, other objects of taxation : and as private corporations are the only other objects of taxation named in the act, the legislature must have designated private corporations as an object of taxation distinct from natural persons and from property.

·The 1st object of taxation—natural persons—is satisfied by the poll-tax in the 6th section. The 2d object of taxation—property—is satisfied in the 7th section, which provides that all property shall be taxed in the manner and subject to the exemptions in the act specified. The 3d object of taxation,. *viz.* private corporations, is satisfied by the 8th, 9th, and 10th sections providing for such taxation.

Nor does the 7th section collide at all with the 8th, 9th,. and 10th sections. The 7th section provides, that all personal estate shall be liable to taxation, in the manner, and subject: to the exemptions in the act specified, at the full and actual value thereof. Now the first property exempted in the act is the capital stock of private corporations held by individuals,. but which capital stock is taxed in the manner prescribed in the 8th section, to wit, at par upon its capital paid in. The property of persons, consisting of stocks in private corpora- tions, is by the 8th section taxed in this manner, to wit, by taxing it at its par value in the name of and to the corpora- tions. It is to be taxed at its full and actual value in the manner specified in the act, and the manner specified in the act is at the full amount of the capital paid in. So that the 7th and 8th sections are in this regard in perfect accord.

It is next contended that this construction of the 8th sec- tion comes in collision with the 14th section of the same act.. This 14th section provides that it shall be the duty of the assessors,·in assessing any property to be assessed under this act, to assess and value such property at its full and fair value, and at such price as in his judgment said property would sell for at a fair and *bona fide* sale by private con- tract, at the time such assessment is made; and every as- sessor shall annex to his duplicate an oath, that all assess- ments in it have been made according to the requirements of this section. Now it could not have been intended, by the legislature, that the last clause of this section should be literally construed, for it is impossible that the assessments required by the 6th and 10th sections should be made ac- cording to the requirements of the 14th section. The legis-

lature could only have intended, by the last clause of the
section, that the oath of the assessor should cover all the
duties required of him by the first clause of the section.
When, therefore, the legislature required that the assessor
should swear that, in assessing any property under this act,
he valued such property at its true value, what property was
in the eye of the legislature? Surely not the stock of pri-
vate corporations in the hands of the stockholders, for that
was free from taxation by the very terms of the act. Was
it the capital stock of private corporations assessed as against
the corporations? Certainly not, for two reasons.

*First.* Because the legislature had already, in the 7th sec-
tion, provided a special manner of taxing that upon a differ-
ent principle than its value; and it is against every principle
of construing statutes, that when a special matter is specially
provided for, it should be affected by a subsequent section
embracing more general matters.

*Secondly.* Because the said 14th section speaks only of as-
sessing property. Now the capital stock of a corporation in
the hands of the stockholder is property, but in the hands of
the corporation it is not. The capital stock of a corporation
in the hands of the stockholders is no more the property of
the corporation than is its circulation. It is the debt of the
corporation, and the property of the stockholders. The as-
sessor, therefore under this act, in assessing the corporation
for its capital stock, is no more assessing property than he
is assessing property when he is assessing a poll-tax. Let
us test this a moment. If the capital stock of a corporation
is property, and is to be assessed at its value, what is the
assessor to assess it at? What is its value? The prosecu-
tors say, what it will bring in market or at private sale. But
what will the capital stock of a corporation bring in the
market by virtue of an assessment against the corporation?
It belongs to the stockholders, and not to the corporation.
As the property of the corporation, it is obviously valueless.
No value can be assigned to it as the property of the corpo-
ration. If sold as the property of the corporation, what

could be got for it? What would the purchaser get? This 14th section does not therefore apply at all to this tax on the capital stock of corporations, but only to property of individuals and corporations, other than what is represented by the par value of their stock. This 14th section has relation only to the second object of taxation named in the first section of the act, *viz.* to tax on property, and not to the first and second objects of taxation therein named, to wit, natural persons and corporations or artificial persons. It is evident that the legislature, in dealing in this regard with corporations, was treating them as artificial persons, and intending the tax on them to be in the nature of a poll-tax. It is a tax on the poll, or head, or capital of the corporation; the capital being to the corporation what the poll or head is to the private individual. The capital is to the artificial person what the *caput* or poll is to the natural person. The prosecutors complain that this is unjust; that their stock has depreciated in value. But it is unjust only in the sense that every poll-tax is unjust. The head, poll, or *caput* of a bachelor is taxed at $2, while that of a married man is taxed at only $1. Is the *caput* of one double the value of the other? We can only say the legislature *sic volet;* they have the power to do so, and have done so. There is nothing unusual in this principle of taxation. It was the universal one in this state prior to the act of 1854.

It is next urged that it is not to be presumed that the legislature would adopt any such arbitrary mode of taxation towards corporations. We are not quite so sure of that.

The increased taxation made necessary by the civil war forced the legislature to look around for additional objects of taxation. For popularity sake, they would naturally look around for matters of taxation that would occasion as little remark as possible. The increased taxation upon individuals would tend to excite clamor everywhere; the rich corporations had also power to resent unequal taxation, but the lame and sickly corporations were without much power to clamor or resent. They were without either friends or sympathy, and consequently the whole community would unite

in the justice of any amount of taxation on them, however unequal. We are not therefore quite certain but that the legislature intended the precise thing which the prosecutors have with so much force and eloquence contended that they should be presumed not to have done. The particularity with which this case has been examined was due to the large interest involved.

CITED in *State, People's Fire Ins. Co., pros.,* v. *Parker, Receiver,* 6 *Vr.* 580

THE STATE, THE WASHINGTON MANUFACTURING COMPANY, PROSECUTORS, v. THOMAS HALLAM, COLLECTOR.